[L.A. No. 31869. Sept. 23, 1985.]

KENNETH L. BAKER et al., Plaintiffs and Appellants, v.
BURBANK-GLENDALE-PASADENA AIRPORT AUTHORITY,
Defendant and Respondent.

**COUNSEL**

John J. Schimmenti and Schimmenti, Mullins & Berberian for Plaintiffs and Appellants.

Gideon Kanner, Fadem, Berger & Norton, Michael M. Berger, O'Donnell & Gordon, Pierce O'Donnell, Steven F. Pflaum, Mark D. Fabiani, Robert H. Burnham, City Attorney (Newport Beach), E. Clement Shute, Jr., Alletta d'A. Belin, Shute, Mihaly & Weinberger, Ronald A. Zumbrun, Robert K. Best, Mark A. Wasser and Timothy A. Bittle as Amici Curiae on behalf of Plaintiffs and Appellants.

Kadison, Pfaelser, Woodard, Quinn & Rossi, Richard K. Simon, Lee L. Blackman, Michael C. Kelley and James I. Ham for Defendant and Respondent.

Ira Reiner, City Attorney (Los Angeles), James H. Pearson, Senior Assistant City Attorney, James L. Spitser, Assistant City Attorney, Robert J. Logan, City Attorney (San Jose), Evet Abt, Deputy City Attorney, George Agnost, City Attorney (San Francisco), Donald J. Garibaldi, Harold J. McElhinny, Morrison & Foerster, John K. Van de Kamp, Attorney General, N. Gregory Taylor, Assistant Attorney General, and Richard M. Frank, Deputy Attorney General, as Amici Curiae on behalf of Defendant and Respondent.

---

OPINION

**REYNOSO, J.**—We are asked to resolve two questions: whether a public entity lacking the power of eminent domain may nonetheless be liable in inverse condemnation; and, whether a plaintiff may elect to treat commercial airport noise and vibrations as a continuing, rather than a permanent, nuisance. For the reasons set forth below, we answer both questions in the affirmative.

Plaintiffs are homeowners who live adjacent to defendant Burbank-Glendale-Pasadena Airport. The airport became a public entity in 1978 when it was purchased by the three cities pursuant to Government Code section 6500 et seq.[1] In 1982, plaintiffs filed suit for inverse condemnation and

---

[1]The cities' joint powers agreement was specifically authorized by Government Code section 6546.1, which provides in relevant part: "In the County of Los Angeles, any agency, commission, or board provided for by joint powers agreement entered into by cities pursuant to Article 1 (commencing with Section 6500) of this chapter for the purpose of the acquisition, operation, repair, maintenance, improvement and administration of the Hollywood-Burbank Airport as a public airport, pursuant to the Federal Aviation Act of 1958, as amended, may carry out such purpose and may authorize the issuance of revenue bonds, pursuant to this article, to pay for acquiring, repairing, improving, financing and refinancing such project, including all facilities and improvements and all expenses incidental thereto or connected therewith. . . ."

nuisance caused by noise, smoke, and vibrations from flights over their homes. The trial court sustained demurrers to both causes of action, dismissing the inverse condemnation action because defendant is prohibited by statute from exercising the power of eminent domain, and dismissing the nuisance action as barred by the statute of limitations covering permanent nuisances. Plaintiffs appeal.

### 1. *Inverse Condemnation*

Defendant contends that because "inverse condemnation" is a "shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted" (*United States* v. *Clarke* (1980) 445 U.S. 253, 257) [63 L.Ed.2d 373, 377, 100 S.Ct. 1127], it should follow that if an entity lacks the power to condemn by eminent domain, it cannot be liable in inverse condemnation. Indeed, there is some authority for this mechanical view. (3 Nichols on Eminent Domain (3d ed. 1981) § 8.1 [4], p. 8-39; *Jacobson* v. *Tahoe Regional Planning Agcy.* (9th Cir. 1977) 566 F.2d 1353, 1358, revd. on other grounds *sub nom.*, *Lake Country Estates* v. *Tahoe Planning Agcy.* (1979) 440 U.S. 391 [59 L.Ed.2d 401, 99 S.Ct. 1171]; *Western Internat'l Hotels* v. *Tahoe Reg. Plan. Agcy.* (D. Nev. 1975) 387 F.Supp. 429, 439; *Gregory* v. *City of New York* (S.D.N.Y. 1972) 346 F.Supp. 140, 143; *Ex Parte Carter* (Ala. 1980) 395 So.2d 65, 67; *Collopy* v. *Wildlife Com'n, etc.* (Colo. 1981) 625 P.2d 994, 1005; cf. *McCormick* v. *Penna. Public Utility Com'n.* (1980) 48 Cmwlth. Ct. 384 [409 A.2d 962, 964].) As defendant is prohibited from exercising eminent domain power,[2] it therefore contends that it cannot be subject to suit for inverse condemnation.

These authorities are not controlling. They fail to recognize that the term, "inverse condemnation," describes an action grounded not on statutory condemnation power, but on the constitutional proscription against the taking (U.S. Const., 5th Amend.) or the taking or damaging (Cal. Const., art. I, § 19) of property for public use without just compensation. A landowner

---

[2]Government Code section 6546.1 provides in part that defendant "shall not authorize or permit . . . the purchase of fee title to condemned real property zoned for residential use . . . ." Moreover, we cannot agree with plaintiffs that Public Utilities Code section 21652 authorizes defendant to take by condemnation the air space easements at issue here. Although that section recognizes air space easements may be acquired by condemnation when "necessary to permit imposition . . . of excessive noise, [or] vibration . . . due to the operation of aircraft to and from the airport" (*id.*, subd. (a)(2)), the section also specifies that only persons "*authorized* to exercise the power of eminent domain" may acquire such air space easements. (*Id.*, subd. (a); italics added.) This section, therefore, cannot be construed as granting to defendant the power of eminent domain to take the subject easements.

whose property has been invaded by a public entity that lacks eminent domain power suffers no less a taking merely because the defendant was not authorized to take.

We have previously recognized the constitutional basis of an inverse condemnation action. In *Rose* v. *State of California* (1942) 19 Cal.2d 713 [123 P.2d 505], we held that mere failure of the Legislature to enact a statute authorizing an inverse condemnation suit did not entitle the state to disregard the constitutional imperative; we therefore allowed the action even though the state had not consented to be sued. (*Id.*, at pp. 719-723.) Similarly, the court in *Sutfin* v. *State of California* (1968) 261 Cal.App.2d 50 [67 Cal.Rptr. 665], held that liability in inverse condemnation did " 'not depend upon a showing that there is statutory authority in the defendant entity to exercise affirmative eminent domain powers to accomplish the same result. All that is necessary to show is that the damage resulted from an exercise of governmental power while seeking to promote "the general interest in its relation to any legitimate object of government." ' " (*Id.*, at p. 55.) We later explicitly recognized what was implicit in *Rose* and *Sutfin*: "[t]he authority for prosecution of an inverse condemnation proceeding derives from article I, section 19, of the California Constitution . . . ." (*Holtz* v. *San Francisco Bay Area Rapid Transit Dist.* (1976) 17 Cal.3d 648, 652 [131 Cal.Rptr. 646, 552 P.2d 430].)[3]

We therefore conclude that plaintiffs' inverse condemnation action may be maintained although defendant lacks eminent domain power. (*Fountain* v. *Metro. Atlanta Rapid Transit Authority* (11th Cir. 1982) 678 F.2d 1038, 1043-1045.)[4] As the inverse condemnation claim was filed within the five-year statute of limitations (*Frustruck* v. *City of Fairfax* (1963) 212

---

[3]To the same effect, see *McMahan's of Santa Monica* v. *City of Santa Monica* (1983) 146 Cal.App.3d 683, 692-693 [194 Cal.Rptr. 582]; *Sheffet* v. *County of Los Angeles* (1970) 3 Cal.App.3d 720, 732 [84 Cal.Rptr. 11]; *Podesta* v. *Linden Irr. Dist.* (1956) 141 Cal.App.2d 38, 47 [296 P.2d 401]; *Alper* v. *Clark County* (1977) 93 Nev. 569 [571 P.2d 810, 812-813]; see also *Zinn* v. *State* (1983) 112 Wis.2d 417 [334 N.W.2d 67, 76-77]; *Van Dissel* v. *Jersey Central Power & Light Co.* (1981) 181 N.J. Super. 516 [438 A.2d 563, 568]; *Minch* v. *City of Fargo* (N.D. 1980) 297 N.W.2d 785, 789; *Kinzli* v. *City of Santa Cruz* (N.D.Cal. 1982) 539 F.Supp. 887, 896; *Ocean Acres, etc.* v. *Dare Cty. Bd. of Health* (E.D.N.C. 1981) 514 F.Supp. 1117, 1120; cf. *Gordon* v. *City of Warren* (6th Cir. 1978) 579 F.2d 386, 391. See generally Van Alstyne, *Statutory Modification of Inverse Condemnation: The Scope of Legislative Power* (1967) 19 Stan.L.Rev. 727, *passim*.

[4]The instant case does not involve allegations of unreasonable zoning or regulatory permit activity—the remedy for which, of course, is not an inverse condemnation suit for damages, but declaratory relief or mandamus. (*Agins* v. *City of Tiburon* (1979) 24 Cal.3d 266, 272-273 [157 Cal.Rptr. 372, 598 P.2d 25].) Clearly, in cases of physical invasion an inverse condemnation action is appropriate. (*Marina Plaza* v. *California Coastal Zone Conservation Com.* (1977) 73 Cal.App.3d 311, 325 [140 Cal.Rptr. 725].)

Cal.App.2d 345, 374 [28 Cal.Rptr. 357]), the trial court erred in dismissing this cause of action.[5]

## 2. *Nuisance*

■ Plaintiffs' second cause of action alleges that defendant's activities became a nuisance as of January 29, 1978—the date defendant became a public entity. Because plaintiffs did not file their complaint until 1982, a question arises as to whether their nuisance claim was timely filed. The answer depends on whether the nuisance is characterized as continuing or permanent.

The trial court ruled that because this particular nuisance is not subject to judicial abatement[6] it is a permanent nuisance upon which the statute of limitations (Gov. Code, § 911.2, Code Civ. Proc., §§ 338, subd. 2 and 340) had run at the time plaintiffs filed their claim.

It does not follow, however, that simply because commercial flights operated in compliance with federal law may not be enjoined, the nuisance at issue is a permanent one. Whether a nuisance will be classified as continuing or permanent depends not on the offending party's interest in continuing the nuisance, but on the type of harm suffered. (See *Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 937 [101 Cal.Rptr. 568, 496 P.2d 480].)

■■ Two distinct classifications have emerged in nuisance law which determine the remedies available to injured parties and the applicable statute of limitations. On the one hand, permanent nuisances are of a type where " 'by one act a permanent injury is done, [and] damages are assessed once for all.' " (*Williams* v. *Southern Pacific R.R. Co.* (1907) 150 Cal. 624, 626

---

[5]*United States* v. *Clarke* (1980) *supra,* 445 U.S. 253, does not suggest a contrary result. In *Clarke* the court granted an injunction against a state's continued invasion of a plaintiff's land for use as a road. The court held that the state had no *defense* to the requested injunction on a theory of inverse condemnation; it did not address the question whether the *plaintiff* had a remedy in inverse condemnation.

Defendant's reliance on *City of Los Angeles* v. *Oliver* (1929) 102 Cal.App. 299 [283 P. 298], for the proposition that the constitutional guarantee of just compensation does not require an inverse condemnation remedy so long as a "reasonably efficient remedy remains" (*id.,* at p. 315) is similarly misplaced. *Oliver* concerned only procedures for calculating just compensation after the state exercised its right of eminent domain; it had nothing to do with the right to bring an inverse condemnation action.

[6]"[C]ommercial flights which are conducted in strict compliance with federal regulations may not be enjoined as nuisances, both because of the continuing public interest in air transportation, and because of the likelihood of direct conflict with federal law." (*Greater Westchester Homeowners Assn.* v. *City of Los Angeles* (1979) 26 Cal.3d 86, 94 [160 Cal.Rptr. 733, 603 P.2d 1329]; see also *Loma Portal Civic Club* v. *American Airlines, Inc.* (1964) 61 Cal.2d 582, 591 [39 Cal.Rptr. 708, 394 P.2d 548].)

[89 P. 599], quoting *Beronio* v. *Southern Pacific R.R. Co.* (1890) 86 Cal. 415, 421 [24 P. 1093].) The cases finding the nuisance complained of to be unquestionably permanent in nature have involved solid structures, such as a building encroaching upon the plaintiff's land (*Rankin* v. *DeBare* (1928) 205 Cal. 639 [271 P. 1050]),[7] a steam railroad operating over plaintiff's land (*Williams, supra,* 150 Cal. 624),[8] or regrade of a street for a rail system (*Eachus* v. *Los Angeles etc. Ry. Co.* (1894) 103 Cal. 614 [37 P. 750]). In such cases, plaintiffs ordinarily are required to bring one action for all past, present and future damage within three years after the permanent nuisance is erected. (*Rankin, supra,* 205 Cal. at p. 641; *Williams, supra,* 150 Cal. at p. 626; *Robinson, supra,* 129 Cal. at p. 11.) The statutory period is shorter for claims against public entities. (Gov. Code, § 911.2.) Damages are not dependent upon any subsequent use of the property but are complete when the nuisance comes into existence. (*Eachus, supra,* 103 Cal. at p. 622.)

On the other hand, if a nuisance is a use which may be discontinued at any time, it is considered continuing in character and persons harmed by it may bring successive actions for damages until the nuisance is abated. (*Phillips* v. *City of Pasadena* (1945) 27 Cal.2d 104, 107-108 [162 P.2d 625].) Recovery is limited, however, to actual injury suffered prior to commencement of each action. Prospective damages are unavailable.

The classic example of a continuing nuisance is an ongoing or repeated disturbance, such as the one before us today, caused by noise, vibration or foul odor. (E.g., *Vowinckel* v. *N. Clark & Sons* (1932) 216 Cal. 156, 158 [13 P.2d 733] [vibration, noise and noxious soot, smoke and gases emanating from pottery factory].)[9] Indeed, even more substantial physical invasions of land have been held to be continuing in character. (E.g., *Tracy* v. *Ferrera* (1956) 144 Cal.App.2d 827, 828 [301 P.2d 905] [deflection of rain water and emission of noxious odors and fumes from neighbor's pipes and furnace].)[10] As emphasized in *Tracy,* the distinction to be drawn is between

[7]See also *Castelletto* v. *Bendon* (1961) 193 Cal.App.2d 64 [13 Cal.Rptr. 907]; *Troeger* v. *Fink* (1958) 166 Cal.App.2d 22 [332 P.2d 779]; *Bertram* v. *Orlando* (1951) 102 Cal.App.2d 506 [227 P.2d 894, 24 A.L.R.2d 899].

[8]See also *Robinson* v. *Southern Cal. Ry. Co.* (1900) 129 Cal. 8 [61 P. 947].

[9]See also *Wade* v. *Campbell* (1962) 200 Cal.App.2d 54, 59 [19 Cal.Rptr. 173, 92 A.L.R.2d 966] (noxious smells, disturbing noises, flies and mosquitoes associated with dairy); *Williams* v. *Blue Bird Laundry Co.* (1927) 85 Cal.App. 388, 395 [259 P. 484] (loud noise, offensive odors and heavy black smoke emitted from laundry).

[10]See also *Guttinger* v. *Calaveras Cement Co.* (1951) 105 Cal.App.2d 382, 387 [233 P.2d 914] (emission of dust and gases from cement plant injuring neighbor's cattle); *Bourdieu* v. *Seaboard Oil Corp.* (1941) 48 Cal.App.2d 429, 436 [119 P.2d 973] (illicit use of facilities on plaintiff's land to process oil and gas); *Collins* v. *Sargent* (1928) 89 Cal.App. 107, 116-117 [264 P. 776] (regular use of explosives in gravel quarry shaking plaintiff's house and throwing gravel upon his land).

encroachments of a permanent nature erected upon one's lands, and a complaint made, not of the location of the offending structures, but of the continuing use of such structures. (*Id., supra,* 144 Cal.App.2d at p. 828.) The former are permanent, the latter is not.[11]

In case of doubt as to the permanency of the injury the plaintiff may elect whether to treat a particular nuisance as permanent or continuing. (*Spaulding* v. *Cameron* (1952) 38 Cal.2d 265, 268 [239 P.2d 625].) The importance of the plaintiff's election has long been recognized. (*United States* v. *Dickinson* (1946) 331 U.S. 745, 749 [91 L.Ed. 1789, 1794, 67 S.Ct. 1382]; *Kornoff* v. *Kingsburg Cotton Oil Co.* (1955) 45 Cal.2d 265, 269-271 [288 P.2d 507]; *Kafka, supra,* 191 Cal. at p. 752; *Williams, supra,* 150 Cal. at p. 628; *Martinez-Ferrer* v. *Richardson-Merrell, Inc.* (1980) 105 Cal.App.3d 316, 326 [164 Cal.Rptr. 591]; *Tracy, supra,* 144 Cal.App.2d at p. 829; 3 Witkin, Cal. Procedure (3d ed 1985) Actions, § 425, pp. 458-459; Rest. 2d Torts, § 930.) As the United States Supreme Court noted in *Dickinson,* a case in which a landowner sued to recover damages after the government flooded his land, "[i]f suit must be brought, lest he jeopardize his rights, as soon as his land is invaded, other contingencies would be running against him—for instance, the uncertainty of the damage and the risk of res judicata against recovering later for damage as yet uncertain. The source of the entire claim . . . is not a single event; it is continuous." (*Dickinson, supra,* 331 U.S. at p. 749 [91 L.Ed. at p. 1794].)

Another contingency running against the plaintiff is the statute of limitations. In *Spaulding* we expressed concern that "if the initial injury is slight and plaintiff delays suit until he has suffered substantial damage and the court then determines that the nuisance was permanent, the defendant may be able to raise the defense that the statute of limitations ran from the time of the initial injury. [Citation.] On the other hand, if the defendant is willing and able to abate the nuisance, it is unfair to award damages on the theory that it will continue. [Citations.]" (*Spaulding, supra,* 38 Cal.2d at p. 268.) We then emphasized that "[b]ecause of these difficulties, it has been recognized that in doubtful cases the plaintiff should have an election to treat the nuisance as either permanent or not. [Citations.]" (*Ibid.*)

■ Defendant contends, however, that this is not a case to which election applies because *Spaulding* separately categorized privileged activity

---

[11]Even solid structures have been considered nuisances where it appeared that the structures could have been removed. (*Phillips, supra,* 27 Cal.2d at p. 107 [city installed barrier blocking access to plaintiff's property]; *Kafka* v. *Bozio* (1923) 191 Cal. 746, 751-752 [218 P. 753] [encroaching structure pushing plaintiff's building out of alignment]; *Strong* v. *Sullivan* (1919) 180 Cal. 331, 334 [181 P. 59] [lunch stand erected daily obstructing plaintiff's property].)

nuisances as permanent. Defendants read too much into the *Spaulding* opinion.

Although *Spaulding* contains language suggesting that election is unavailable when the nuisance arises as a result of privileged activity,[12] this isolated aspect of the opinion must be viewed in context. First, the purported exclusion is dictum only. *Spaulding* did not involve a question of privilege. In *Spaulding,* the defendant, a private landowner, negligently maintained piles of dirt on his property which caused mudslides on the plaintiff's land when it rained. The trial court ordered the nuisance abated but also awarded prospective damages for permanent diminution in the value of plaintiff's property. Thus, the issue was the necessity of election, not whether privilege precluded such election.

Second, *Spaulding's* election discussion is based, in part, on *Phillips, supra,* 27 Cal.2d 104, a case involving "privileged" governmental activity. In *Phillips* we held that even assuming the city could not be required to remove a road block obstructing access to Phillips' property, it could not be said as a matter of law that the gate was a permanent nuisance since it apparently "could have been removed at any time." (*Id.,* at p. 108.) It is difficult to reconcile this case, affirmatively relied upon in *Spaulding,* with an interpretation of the latter as absolutely barring election when privileged activity is at issue. The two opinions are more realistically viewed as focusing the election inquiry on the ability to abate rather than on the possibility of a court order requiring abatement.

Third, public policy militates against defining a nuisance as permanent or continuing on the basis of privilege alone. As noted, the purpose of nuisance law is to provide a means of recovery for harm suffered. The doctrine of election is designed to facilitate just and equitable recovery. Though the traditional remedy of injunctive relief may be unavailable in a given case, the damage suffered is no different than in a case involving identical but nonprivileged activity. Both victims are harmed in the same way, and both may seek damages for such harm. Where the nuisance is a continuing one, both victims, therefore, should be able to bring successive actions as dam-

---

[12] In discussing the continuing/permanent distinction and the basis of election, the court noted in passing: "The clearest case of a permanent nuisance or trespass is the one where the offending structure or condition is maintained as a necessary part of the operations of a public utility. Since such conditions are ordinarily of indefinite duration and since the utility by making compensation is entitled to continue them, it is appropriate that only one action should be allowed to recover for all the damages inflicted. It would be unfair to the utility to subject it to successive suits and unfair to the injured party if he were not allowed to recover all of his probable damages at once. [Citation.]" (*Spaulding, supra,* 38 Cal.2d at pp. 267-268.)

ages accrue. To hold that the statute of limitations applies to one continuing nuisance but not the other is to put the burden on the victim to choose his or her tortfeasor wisely. Nuisance law neither requires nor supports such a harsh result.

Moreover, we should be particularly cautious not to enlarge the category of permanent nuisances beyond those structures or conditions that truly are permanent. Where some means of abatement exists, there is little or no incentive to make remedial efforts once the nuisance is classified as permanent. Such a result is at odds with tort law's philosophy of encouraging innovation and repair to decrease future harm.

Finally, the privilege alluded to in *Spaulding* is quite different from the privilege claimed in the present case. In a word, the *Spaulding* privilege is absolute. *Spaulding* referred to an "offending structure or condition [] maintained as a necessary part of the operations of a public utility" as a clear permanent nuisance, "[s]*ince the utility by making compensation is entitled to continue them.*" (*Id.,* 38 Cal.2d at p. 267.) (Italics added.)

■ We do not deal with such an extensive privilege. Federal preemption of local regulation of airport noise is not absolute. In *Greater Westchester, supra,* 26 Cal.3d 86, we concluded that federal preemption does not operate to wholly eliminate local responsibility for airport noise control. We based this conclusion, in part, on the distinction drawn by the United States Supreme Court in *City of Burbank* v. *Lockheed Air Terminal* (1973) 411 U.S. 624 [36 L.Ed.2d 547, 93 S.Ct. 1854], between a municipality's exercise of the police power and its proprietary efforts to reduce airport noise. Federal law preempts only the former. (*Id.,* at pp. 635-636, fn. 14 [36 L.Ed.2d at pp. 554-555]; *Greater Westchester, supra,* 26 Cal.3d at p. 96. See also *San Diego Unified Port Dist.* v. *Gianturco* (9th Cir. 1981) 651 F.2d 1306, 1314, cert. den., 455 U.S. 1000 [71 L.Ed.2d 866, 102 S.Ct. 1631].) The message of *City of Burbank* and *Greater Westchester* is clear: state law damage remedies remain available against an airport proprietor despite the fact that federal law precludes interference with commercial flight patterns and schedules.

■ Moreover, recovery is not limited to damages for permanent nuisance only. In *Greater Westchester* we affirmed damage awards totalling $86,000 for personal injuries sustained during the period 1967-1975 by persons living near Los Angeles International Airport. (*Id.,* 26 Cal.3d at p. 92.) Although we did not otherwise identify the nuisance as permanent or continuing, the time frame given strongly suggests the latter.

The airport operator's separate duty to reduce noise, and hence, separate nuisance liability, is particularly compelling in the present case. Defendant is a public entity charged with responsibility for the "acquisition, operation, repair, maintenance, improvement and administration" of the airport as a public airport. (Gov. Code, § 6546.1.) Not only does defendant play a proprietary role in the airport's operations, but it is expressly required by statute to make all reasonable efforts to curb noise pollution at the airport. "In operating the airport, the separate public entity . . . shall not permit or authorize any activity in conjunction with the airport which results in an increase in the size of the noise impact area . . . and shall further comply with the future community noise equivalent levels prescribed by [the California Administrative Code]. . . . [¶] In addition, the entity shall diligently pursue all reasonable avenues available to insure that the adverse effects of noise are being mitigated to the greatest extent reasonably possible." (*Ibid.*) Thus, despite the fact that the flights to and from the airport are privileged, defendant shoulders an affirmative responsibility to minimize noise levels through the use of buffers, barriers or other noise reducing devices. The privilege is not absolute.

Airport operations are the quintessential continuing nuisance. Although federal law precluding interference in any way with flight patterns and schedules adds an element of permanency to an otherwise continuing problem, it does not mandate that the overall nuisance is a permanent one. Thus plaintiffs may elect whether to treat airport noise and vibrations as a continuing or as a permanent nuisance.

Because plaintiffs elected to treat the airport as a continuing nuisance, we conclude that the statute of limitations does not bar their nuisance claims.

For the foregoing reasons, the judgment is reversed as to both causes of action.

Bird, C. J., Kaus, J., Broussard, J., and Grodin, J., concurred.

**MOSK, J.,** Concurring and Dissenting.—I agree with the majority that plaintiffs may maintain a cause of action for inverse condemnation even though defendant lacks the power of eminent domain.

I am compelled to dissent, however, from their discussion and disposition of the nuisance cause of action. They effectively ignore principles that have guided the courts of this state and other jurisdictions in the task of classifying nuisances, and thus err in concluding that plaintiffs' claim is timely.

Moreover, they potentially subject this airport to repeated and vexatious litigation based on the same nuisance.

Plaintiffs allege that defendant's activities became a nuisance as of January 29, 1978—the date defendant became a public entity. If a nuisance is deemed "permanent," a plaintiff must—within the applicable statute of limitations—sue for all past, present, and future damages in one action. If, by contrast, a nuisance is deemed "continuing," a plaintiff may sue only for damages suffered before the action was filed, but he will not be barred from pressing future claims so long as the nuisance continues.

In *Spaulding* v. *Cameron* (1952) 38 Cal.2d 265 [239 P.2d 625], Justice Traynor prescribed the test for determining whether a nuisance is continuing or permanent, and discussed the policy of the law: "In early decisions of this court it was held that it should not be presumed that a nuisance would continue, and damages were not allowed for a decrease in market value caused by the existence of the nuisance but were limited to the actual physical injury suffered before the commencement of the action. [Citations.] The remedy for a continuing nuisance was either a suit for injunctive relief or successive actions for damages as new injuries occurred. *Situations arose, however, where injunctive relief was not appropriate or where successive actions were undesirable either to the plaintiff or the defendant or both. Accordingly, it was recognized that some types of nuisances should be considered permanent, and in such cases recovery of past and anticipated future damages were allowed in one action.*

"The clearest case of a permanent nuisance or trespass is the one where the offending structure or condition is maintained as a necessary part of the operations of a public utility. Since such conditions are ordinarily of indefinite duration and since the utility by making compensation is entitled to continue them, it is appropriate that only one action should be allowed to recover for all the damages inflicted. It would be unfair to the utility to subject it to successive suits and unfair to the injured party if he were not allowed to recover all of his probable damages at once." (*Id.*, at p. 267, italics added.)

Thus, if a use of property alleged to be a nuisance is likely to continue indefinitely because its owner cannot be compelled to abate, the nuisance is deemed permanent and the plaintiff is given a single cause of action for his damages past, present, and future. This test for classifying nuisances as either continuing or permanent turns on whether the nuisance is reasonably abatable. It is the rule followed not only in this state (see, e.g., *Kornoff* v. *Kingsburg Cotton Oil Co.* (1955) 45 Cal.2d 265, 269-271 [288 P.2d 507];

*Spaulding* v. *Cameron, supra,* 38 Cal.2d at p. 267), but in other jurisdictions as well (see, e.g., *Maloney* v. *Heftler Realty Company* (Fla.App. 1975) 316 So.2d 594, 595; *City of Columbus* v. *Myszka* (1980) 246 Ga. 571, 572 [272 S.E.2d 302]; *Patz* v. *Farmegg Products, Inc.* (Iowa 1972) 196 N.W.2d 557, 562; *Kentland-Elkhorn Coal Company* v. *Charles* (Ky.App. 1974) 514 S.W.2d 659, 664; *Goldstein* v. *Potomac Elec. Power Co.* (1979) 285 Md. 673, 688-690 [404 A.2d 1064]; *Drybread* v. *City of St. Louis* (Mo.App. 1982) 634 S.W.2d 519, 520-521; *Rebel* v. *Big Tarkio Drainage Dist.* (Mo.App. 1980) 602 S.W.2d 787, 792-793; *Sundell* v. *Town of New London* (1979) 119 N.H. 839 [409 A.2d 1315, 1320-1321]; *Aguayo* v. *Village of Chama* (1969) 79 N.M. 729, 731 [449 P.2d 331]; *Krueger* v. *Mitchell* (1983) 112 Wis.2d 88, 102-103 [332 N.W.2d 733]). It is also approved by commentators: "But if the nuisance can not be abated, or is such that the court will not enjoin its continuance, all damages must be obtained in one action." (1 Harper & James, The Law of Torts (1956) § 1.30, p. 91.)

Under these principles, the nuisance alleged here must be deemed permanent. First, injunctive relief is not simply inappropriate, it is unavailable. As this court observed in *Greater Westchester Homeowners Assn.* v. *City of Los Angeles* (1979) 26 Cal.3d 86 [160 Cal.Rptr. 733, 603 P.2d 1329], certiorari denied, 449 U.S. 820 [66 L.Ed.2d 22, 101 S.Ct. 77], "commercial flights which are conducted in strict compliance with federal regulations may not be enjoined as nuisances, both because of the continuing public interest in air transportation, and because of the likelihood of direct conflict with federal law." (*Id.*, at p. 94; see also *Loma Portal Civic Club* v. *American Airlines, Inc.* (1964) 61 Cal.2d 582, 591 [39 Cal.Rptr. 708, 394 P.2d 548].) Second, successive actions are plainly undesirable. As the Supreme Court of Wisconsin recently held in *Krueger* v. *Mitchell,* an airport noise case, "The injured party must . . . present his . . . entire claim for past and future damages in one action. This limitation on such a damage action is necessary in order to protect airport proprietors from repeated and vexatious litigation based on the same nuisance." (112 Wis.2d at p. 103.)

In some cases classification may be doubtful; in such cases, the *Spaulding* court observed, a plaintiff should be allowed to elect whether to treat the alleged nuisance as continuing or permanent. (38 Cal.2d at p. 268.) Recognizing that their claim here would be barred by limitations if the asserted nuisance is characterized as permanent, plaintiffs insist this case is within the class defined in *Spaulding* as "doubtful," and hence that they may avoid the limitations bar by treating the alleged nuisance as continuing.

*Spaulding* allows such an election only if, inter alia, "the defendant is not privileged to continue the nuisance . . . ." (*Ibid.*) As *Greater West-*

*chester* establishes, defendant's use of its property may not be enjoined as a nuisance: there are no allegations that defendant either is not subject to or has failed to comply with federal regulations. (26 Cal.3d at p. 94.) Thus, defendant is privileged to continue the nuisance alleged here.[1]

Nor is defendant's privilege to continue the alleged nuisance diminished by its *ability* to adopt means within its power to mitigate the allegedly offensive noise. Although the federal government has apparently not preempted all facets of noise control (*Greater Westchester, supra,* 26 Cal.3d at pp. 93-100, and authorities cited; Bennett, *Airport Noise Litigation: Case Law Review* (1982) 47 J. Air L. & Com. 449, 464-469; Werlich & Krinsky, *The Aviation Noise Abatement Controversy: Magnificent Laws, Noisy Machines, and the Legal Liability Shuffle* (1981) 15 Loyola L.A. L.Rev. 69, 83-91; Comment, *The 1980 Airport Noise Act: Noise Abatement or Just More Noise?* (1981) 14 U.C. Davis L.Rev. 1049, *passim*), it is clear that permissible local regulation may be imposed only by airport *proprietors,* and not by third parties. (See Bennett, *supra,* 47 J. Air L. & Com. at pp. 469-473, and cases cited.) Thus in *City of Burbank* v. *Lockheed Air Terminal* (1973) 411 U.S. 624 [36 L.Ed.2d 547, 93 S.Ct. 1854], the United States Supreme Court invalidated a municipal ordinance that purported to regulate noise by imposing a take-off curfew on a privately owned airport. *City of Burbank* plainly establishes that the delicate federal/local-proprietor noise control scheme currently in effect will not tolerate private suits seeking mandatory imposition of local noise controls. (Cf. *San Diego Unified Port Dist.* v. *Gianturco* (9th Cir. 1981) 651 F.2d 1306, 1316-1319, cert. den. (1982) 455 U.S. 1000 [71 L.Ed.2d 866, 102 S.Ct. 1631] [state may not direct an airport proprietor to exercise its noise abatement power].)

Thus, plaintiffs may not elect to treat the alleged nuisance as continuing: defendant is privileged to continue the nuisance and it must therefore be classified as permanent. (See *Krueger* v. *Mitchell, supra,* 112 Wis.2d at pp. 102-103 [injunctive relief against airport noise unavailable; plaintiff may claim damages for permanent nuisance only].)[2]

---

[1]Since "privileged" in this context merely means not reasonably abatable (see *Spaulding, supra,* 38 Cal.2d at pp. 267-268), the majority's claim to the contrary (*ante,* at pp. 870-872) is manifestly specious.

[2]*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920 [101 Cal.Rptr. 568, 496 P.2d 480], does not support a contrary conclusion. In *Nestle* we held, inter alia, that a nuisance action based on airport noise was improperly dismissed on the basis of government immunity, and suggested that the plaintiffs on remand might be able to demonstrate a continuing nuisance. This dictum, of course, preceded the United States Supreme Court's noise control preemption decision in *City of Burbank* (1973) *supra,* 411 U.S. 624; moreover, the court was not asked to consider *Spaulding*'s first requirement for election: a nuisance may not be treated as continuing if the defendant is privileged to continue it.

Claims against public entities alleging injuries to persons or personal property must be brought by the 100th day after the accrual of the cause of action; all other claims—including those for real property damage—must be brought within 1 year after accrual of the cause of action. (Gov. Code, § 911.2.) As plaintiffs implicitly admit, their nuisance cause of action accrued when the public entity undertook operations on January 29, 1978; from that date, plaintiffs claim, defendant's operations have "substantially interfered" with the use and enjoyment of their properties. Because the limitations period began to run at that time, it is clear that plaintiffs' 1982 complaint is untimely.

I would accordingly affirm the order dismissing the nuisance cause of action.

Lucas, J., concurred.