105 F.3d 666
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Eric PRESCOTT; Pauline Jones; Mt. Shasta Vista Property
Owner's Association, Plaintiffs-Appellants,
v.
UNITED STATES of America, U.S. Forest Service; U.S.
Department of Agriculture, Defendants-Appellees.
 No. 95-17032.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 8, 1996.
Decided Dec. 30, 1996.
 
 Before: HUG, Chief Judge, REAVLEY,* and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 OVERVIEW
 
 2
 The Mt. Shasta Vista Property Owner's Association and property owners, R. Eric Prescott and Pauline Jones[1], appeal the district court's summary judgment in favor of the United States, the United States Forest Service, and the Department of Agriculture in their action under the Federal Tort Claims Act, 28 U.S.C. § 2674, (FTCA) for damages caused by the 1990 flooding of their property following the government's 1976 removal of a diversion dam on Whitney Creek in the Klamath National Forest. Following cross motions for partial summary judgment, the district court granted summary judgment in favor of the United States, finding that the removal of the dam created a permanent nuisance in 1976 and, as a consequence, that plaintiffs' claims were barred by the two-year FTCA statute of limitations. We affirm the district court's summary judgment in favor of the United States and dismiss Jones' appeal.
 
 FACTS AND PRIOR PROCEEDINGS
 
 3
 Whitney Creek is a glacier-fed stream which flows through the Klamath National Forest in northern California. In 1949 the United States Forest Service (USFS) issued a Special Use Permit to an adjoining private landowner allowing construction of a dam and ditch on Whitney Creek to divert the flow of the creek.
 
 
 4
 In the mid-1960s, a developer began construction of the Mount Shasta Vista subdivision on and adjacent to the then-dry channels and alluvial plain of Whitney Creek. The developer formed the Mt. Shasta Vista Property Owner's Association (Association) which holds title to and maintains all interior subdivision roads.
 
 
 5
 In 1971 USFS personnel detected accelerated erosion and degradation along the Whitney Creek diversion ditch. The agency contacted the successor to the original Special Use Permit holder, Lake Shastina Properties, Inc., and told it that it had to either repair the ditch or remove the dam. At the time, USFS personnel were aware of the Mt. Shasta Vista development and were of the opinion that dam removal and the consequent return of Whitney Creek flows to their original channel would have a minor impact on the property in the development. Lake Shastina Properties did not need the water diverted from Whitney Creek and also did not want to bear the expense of ditch repair. Consequently, in March 1976, Lake Shastina Properties removed the dam with the Forest Service's observation and approval.
 
 
 6
 In June 1976, the water flowing down the original Whitney Creek channel damaged Association properties. In 1980 the Association brought an action against, among others, the United States, the USFS, and the Department of Agriculture. The Association sought damages under the FTCA alleging that the United States had negligently, willfully and intentionally, and recklessly and wantonly altered the course of Whitney Creek. The Association sought an injunction ordering the government to redivert Whitney Creek or construct a permanent solution to the flooding problem. The 1980 action was tried by the court. The court found that the United States had acted negligently when it ordered removal of the dam knowing that it might cause damage to Association property and that the negligence was the proximate cause of damage to 3 1/2 miles of the Association's unpaved access road. The court, however, rejected the Association's request for injunctive relief because the permanent solution was impractical, and awarded damages based on diminution in value of the property. Before judgment against the United States was entered in favor of the Association, the Association settled its case against the United States' co-defendants for $225,000. The United States received a credit against the total settlement amount and paid no damages. The United States did not appeal the judgment.
 
 
 7
 In 1990 Whitney Creek flooded again and the Association and two property owners, Prescott and Jones, brought this action to recover for damages caused by the 1990 flooding. The parties filed cross motions for partial summary judgment. The district court granted the plaintiffs' motion, holding that issue preclusion, or collateral estoppel, barred the United States from relitigating the 1980 holdings that the government was negligent in allowing the dam to be destroyed and that the discretionary function exception was unavailable to shield the government from liability. The district court also granted the defendants' motion for partial summary judgment based on defendants' assertion that the nuisance created by the negligent removal of the dam in 1976 was a permanent nuisance for which the plaintiffs could recover damages only once. The district court ruled that it was implicitly determined in the 1980 action that the nuisance was permanent and made an independent determination that the nuisance was permanent:
 
 
 8
 The [1980] Court denied [plaintiffs' request for] the injunction based on expert testimony that abatement was impractical. Thus though the issue was not expressly addressed in the prior lawsuit because plaintiffs did not cast their claims in nuisance terms, the Court implicitly found the nuisance was permanent....
 
 
 9
 * * *
 
 
 10
 * * *
 
 
 11
 I'd also like to add that even without Judge Lynch's prior determination that the abatement of the nuisance was impractical or is impractical, I would independently find that the nuisance created by the rediversion of the creek was permanent. It has all the characteristics of the classic permanent nuisance.
 
 
 12
 It was created by a single act. It is not perpetrated by any continuing activity, and it cannot be discontinued by merely ceasing an ongoing activity. And there can be no reasonable doubt that the rediversion of the creek at the time of the prior lawsuit was in fact permanent.
 
 
 13
 Because the district court found that the removal of the dam created a permanent nuisance, it held that the plaintiffs' claims were time-barred because the claims were not presented to the Forest Service within two years of the time the claim accrued (when the permanent nuisance was created). See 28 U.S.C. §§ 2401(b), 2675(a).
 
 
 14
 The plaintiffs timely appealed from the district court's judgment in favor of the United States.
 
 STANDARD OF REVIEW
 
 15
 "A grant of summary judgment is reviewed de novo." Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996) (citations omitted). "When a mixed question of fact and law involves undisputed underlying facts, summary judgment is appropriately granted." Han v. Mobil Oil Corp., 73 F.3d 872, 874 (9th Cir.1995); Union Sch. Dist. v. Smith, 15 F.3d 1519, 1523 (9th Cir.), cert. denied, 513 U.S. 965, 115 S.Ct. 428 (1994). A mixed question of law and fact occurs when the historical facts are established, the rule of law is undisputed, and the issue is whether the facts satisfy the legal rule. Pullman-Standard v. Swint, 456 U.S. 273, 289 n. 19 (1982).
 
 
 16
 A district court's interpretation of state law is reviewed under the same independent de novo standard as are questions of federal law. Salve Regina College v. Russell, 499 U.S. 225, 231 (1991); Huey v. Honeywell, Inc., 82 F.3d 327, 329 (9th Cir.1996).
 
 ANALYSIS
 
 17
 The outcome of this litigation turns on the character of the nuisance created by removal of Whitney Creek Dam. If the nuisance was "permanent" more than two years before the plaintiffs filed their FTCA administrative claims, their claims are time-barred. See Bartleson v. United States, 96 F.3d 1270, 1276 (9th Cir.1996). "Damages [for a permanent nuisance] are not dependent upon any subsequent use of the property but are complete when the nuisance comes into existence." Baker v. Burbank-Glendale-Pasadena Airport Auth., 705 P.2d 866, 870 (Cal.1985), cert. denied, 475 U.S. 1077 (1986). If the nuisance is "continuing," then every repetition of the nuisance is a separate wrong, "for which the person injured may bring successive actions for damages until the nuisance is abated, even though an action based on the original wrong may be barred." Phillips v. City of Pasadena, 162 P.2d 625, 626-27 (Cal.1945). "Recovery is limited ... to actual injury suffered [within the two years] prior to commencement of each action," and "[p]rospective damages are unavailable." Baker, 705 P.2d at 870.
 
 
 18
 In this action, the district court ruled that the nuisance was permanent. The court based its ruling on two grounds: 1) the 1980 decision implicitly held that the nuisance was permanent; and 2) the court's independent conclusion that removal of the dam created a permanent nuisance. Either of these grounds is sufficient to support summary judgment against the Association's claims. The second ground is sufficient to support grant of summary judgment against Prescott's claim. Because we affirm on the basis of the district court's independent determination that removal of the dam created a permanent nuisance in 1976, we do not reach the issues of what was decided in the 1980 proceeding and whether Prescott, who was not a party to that proceeding, is bound by determinations made by the court in 1980.
 
 
 19
 Appellants argue that the district court erred in its independent determination that, under California law, the removal of Whitney Creek Dam created a permanent nuisance. They argue that it should be characterized as a continuing nuisance because the harm caused, the intermittent and unpredictable flooding, varies over time, relying on Baker, 705 P.2d 866 (Cal.1985). In Baker, residents near an airport brought a nuisance action against the airport authority asserting that the airport noise and vibrations constituted a continuing nuisance. The California trial court had held that because the court could not order the noise abated, the nuisance was a permanent one upon which the statute of limitations had run. The California Supreme Court reversed, stating: "[w]hether a nuisance will be classified as continuing or permanent depends not on the offending party's interest in continuing the nuisance, but on the type of harm suffered." 705 P.2d at 869.
 
 
 20
 The Baker decision was discussed in the most recent California Supreme Court decision that distinguished between continuing and permanent nuisances, Mangini v. Aerojet Gen. Corp., 912 P.2d 1220 (Cal.1996). In Mangini, property owners brought suit against a former lessee of the property for damages resulting from disposal of hazardous waste. The activities of the former lessee had ceased in 1970. The property owners purchased the property in 1979, were on notice of the contamination sometime in 1979, and brought the action in 1988. If the nuisance was permanent, the claims of the property owners were barred by the three-year statute of limitations applicable to permanent nuisances under California law. The court held that "because plaintiffs ... failed to present any substantial evidence that the contamination of their land ... was capable of being abated at a reasonable cost, the nuisance must be deemed permanent." 912 P.2d at 1221. " '[A]batable' means that the nuisance can be remedied at a reasonable cost by reasonable means." Id. at 1229. The court in Mangini stressed that Baker did not "deviate[ ] from the rule that abatability determines the character of the nuisance." Id. at 1229.
 
 
 21
 In addition to the impracticality of abatement, the district court relied on several other factors in making its independent finding that the "nuisance created by the rediversion of the creek was permanent:" 1) it was created by a single act; 2) not perpetuated by an ongoing activity; 3) cannot be discontinued by ceasing an activity; and 4) the rediversion was permanent. After de novo review, we conclude that the district court did not err in applying the law to established facts and concluding that the removal of Whitney Creek Dam in 1976 created a permanent nuisance. As a consequence, appellants' claims are time-barred.[2]
 
 CONCLUSION
 
 22
 The district court's summary judgment in favor of the United States is AFFIRMED. Jones' appeal is DISMISSED.
 
 
 
 *
 Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Jones, appealing pro se, has not filed an opening brief. By order of January 19, 1996, Jones was to have filed her opening brief by February 26, 1996, or have her appeal dismissed under Circuit Rule 42-1
 
 
 [2]
 In Bartleson, we stated "[i]n case of doubt as to the permanency of the injury, the plaintiff may elect whether to treat a particular nuisance as permanent or continuing." 96 F.3d at 1275 (quoting Baker, 705 P.2d at 870-71). Appellants argue they should not be foreclosed their opportunity to make a knowing election. Blue Brief at 26-28. In this instance, there is no doubt as to the permanency of the dam removal and election is not available