[No. G023360. Fourth Dist., Div. Three. Apr. 16, 2002.]

AMRIT PATEL et al., Plaintiffs and Appellants, v.
SOUTHERN CALIFORNIA WATER COMPANY et al., Defendants and
Respondents.

**COUNSEL**

Palmieri, Tyler, Wiener, Wilhelm & Waldron and Bruce W. Dannemeyer for Plaintiffs and Appellants.

O'Melveny & Myers, James W. Colbert III and Todd A. Green for Defendant and Respondent Southern California Water Company.

Quinn, Emanuel, Urquhart, Oliver & Hedges and Harold W. Hopp for Defendant and Respondent Smart SMR of California, doing business as Nextel Communications.

Gray, Cary, Ware & Freidenrich, William N. Kammer and Mary A. Lehman for Defendant and Respondent Cox Communications PCS, L.P.

## OPINION

## SILLS, P. J.—

## I. INTRODUCTION

The real question raised by this appeal is whether a public utility has the power of eminent domain to take private property for a purpose, say, simply making money, that is unrelated to the actual service the utility provides the public. The answer is, of course, no. Accordingly, we affirm a judgment based on the conclusion that when a water company allowed two cell phone companies to use a water-related easement for non-water-related purposes, the only thing that was happening was simple trespass, not inverse condemnation.

## II. FACTS

Amrit and Hasu Patel bought their mostly unimproved Cowan Heights lot in the late 1980's.[1] An adjoining parcel owned by the Southern California Water Company is essentially land-locked, with the only access to a street over the Patels' parcel. The water company was granted an easement across what would later be the Patels' land in 1981. The easement was restricted to "ingress, egress and passage across with all the necessary materials, tools, supplies, and other equipment necessary for the installing, enlarging, replacing, maintaining and operation of other water supply facilities located on adjacent land."[2]

In 1995, the water company entered into a lease with two well-known cell phone companies, Cox and Nextel, which allowed the installation of wireless communications equipment on the water company's property. In order to get to their leased property, Cox and Nextel regularly drove their trucks over the Patels' driveway to install radio transmitting and receiving antennas and other related telecommunications equipment, a use which far exceeded the number of trips made by the water company.

The Patels sued. Given the facts, it was pretty obvious that the cell phone companies' use of the driveway exceeded the scope of the easement, and the

---

[1]Although the Patels were still the owners of the lot at the time they filed the instant lawsuit, they sold the lot in early 1997.

[2]The "adjacent land" refers to the water company's parcel.

case settled on all issues except for the question of whether there could be any liability on an inverse condemnation theory. If so, the defendants would owe the Patels' attorney fees. (Code Civ. Proc., § 1036.)[3]

After a half-day hearing on the issue, the trial court determined that the actions of the water company and wireless companies constituted a "mere trespass," rather than acts sufficient to establish a claim for inverse condemnation, and thus awarded no payment of the Patels' attorney fees. The Patels then appealed.

## III. DISCUSSION

There is, of course, no doubt that the water company, under the Public Utilities Code, has the power of eminent domain to take private property for a variety of water-related activities, such as servicing water tanks and maintaining water pipes. (See Pub. Util. Code, § 2729 ["A mutual water company may exercise the power of eminent domain for water, water rights, canals, ditches, dams, poundings, flumes, aqueducts, and pipes for irrigation of lands furnished with water by such company."].) ■ And, by the same token, there is also no doubt that the power includes any "incidental property" necessary for those water-related activities. (*City of Santa Barbara v. Cloer* (1963) 216 Cal.App.2d 127, 131 [30 Cal.Rptr. 743].)[4]

However, the water company's power of eminent domain is still limited by our state Constitution: The power must be only exercised in furtherance of a "public use." (Cal. Const., art. I, § 19.)

Manifestly, the "public use" of the water company's right of eminent domain is to provide water to surrounding areas. It is not to make money by going into the property management business and renting out its land—indeed, in this case it appears to have rented out what it didn't even have. That hardly qualifies as a "public use" under the state Constitution.

---

[3]Which provides in pertinent part: "In any inverse condemnation proceeding, the court rendering judgment for the plaintiff by awarding compensation . . . shall . . . award or allow to the plaintiff, as a part of that judgment . . . a sum that will . . . reimburse the plaintiff's reasonable . . . attorney . . . fees, actually incurred because of that proceeding." (Code Civ. Proc., § 1036.)

[4]The principle has been codified in Code of Civil Procedure section 1240.120, subdivision (a), which provides in pertinent part: "[A]ny person authorized to acquire property . . . by eminent domain may exercise the power . . . to acquire property necessary to carry out and make effective the principal purpose involved including but not limited to property to be used for the protection or preservation of the attractiveness, safety, and usefulness of the project." A utility may, of course, sell what it lawfully acquires through eminent domain. (See Code Civ. Proc., § 1240.120, subd. (b) ["a person may acquire property under subdivision (a) with the intent to sell, lease, exchange, or otherwise dispose of the property, or an interest therein"].)

True, courts have been liberal in what they have considered public uses. ▉▉▉ Even the expropriation of a major league football team and its subsequent sale to a private person have been held to be a public use on the theory that the football franchise provided jobs and helped the local economy. (See *City of Oakland v. Oakland Raiders* (1982) 32 Cal.3d 60, 73-74 [183 Cal.Rptr. 673, 646 P.2d 835, 30 A.L.R.4th 1208].)[5]

Similar economic thinking justified the taking of golf carts and other golf equipment owned by a private party for a golf course owned by a city in an isolated desert area. The idea was that the golf course was the cornerstone of the local economy by being the city's "primary recreational resource" and an "important tourist attraction" for winter "snowbirds." (See *City of Needles v. Griswold* (1992) 6 Cal.App.4th 1881, 1891 [8 Cal.Rptr.2d 753].)

▉ But there comes a point at which a court must confront a trend, and yell halt. This case has reached that point. What's good for a public utility is not ipso facto good for the public. Providing water is a public use; enriching the coffers of a water company is not.

This case is thus much closer to *Cantu v. Pacific Gas & Electric Co.* (1987) 189 Cal.App.3d 160 [234 Cal.Rptr. 365], where the installation of a trench to extend gas and electric service to 16 lots within a subdivision was held to be private, not a public use, and therefore the plaintiffs couldn't claim that subsequent landslide damage was inverse condemnation. (See *id.* at p. 164.) That is, the benefit of the lease to the cell phone companies was private (primarily to the shareholders of the water company) and not to the public.

But what about the cellular phone services provided by the wireless companies which ostensibly gained their right to truck over the Patels' property from the water company?

We need not decide here whether wireless companies such as Cox and Nextel have the power of eminent domain for purposes of providing cell phone services. Even if, for the sake of argument, providing cell phone services is a public use, it is still a *non-water-related* use. The salient fact here is that, under the terms of the grant of easement, the scope of the easement in question extended only to water-related and incidental uses. The

---

[5]Actions for direct condemnation and inverse condemnation are functionally the same. (See *City of Oakland v. Oakland Raiders, supra,* 32 Cal.3d at p. 67.) The only real difference is that inverse condemnation is an action initiated by the landowner whose property rights have already been infringed upon, whereas in a direct condemnation action, the public entity acts first and compensates the landowner prior to the taking. (*Baker v. Burbank-Glendale-Pasadena Airport Authority* (1985) 39 Cal.3d 862, 866 [218 Cal.Rptr. 293, 705 P.2d 866].)

water company could not sell to the wireless companies an easement for a non-water-related use. In the context of this case, then, the wireless companies functioned in the role of mere trespassers.

## IV.   CONCLUSION

This was a case of trespass, not inverse condemnation. The judgment is affirmed. In the interests of justice, each side will bear its own costs on appeal.

Rylaarsdam, J., and Bedsworth, J., concurred.

On May 13, 2002, the opinion was modified to read as printed above.