**PEOPLE of the State of California, et al., Plaintiffs,**

v.

**KINDER MORGAN ENERGY PARTNERS, L.P., et al., Defendants.**

**Case No.: 07cv1883–MMA (WVG)**

United States District Court, S.D. California.

Signed February 2, 2016

Daniel F. Bamberg, Office of the City Attorney, San Diego, CA, Rene Pierre Tatro, Steven Russell Tekosky, Tatro Tekosky Sadwick LLP, Los Angeles, CA, for Plaintiffs.

M. Ray Hartman, III, Cooley LLP, Amber R. Holderness, Michael Sean Tracy,

**1188**

DLA Piper US LLP, Steven M. Strauss, Summer J. Wynn, Cooley Godward Kronish, San Diego, CA, Gregory T. Broderick, U.S. Attorney's Office, Eastern District of California, Steven H. Goldberg, Downey Brand, Sacramento, CA, for Defendants.

## ORDER AFFIRMING TENTATIVE RULINGS RE: DEFENDANTS' DAUBERT MOTIONS AND MOTION FOR PARTIAL SUMMARY JUDGMENT

[Doc. Nos. 203, 204, 207, 318]

HON. MICHAEL M. ANELLO, United States District Judge

Plaintiffs People of the State of California and the City of San Diego ("the City") and Defendants Kinder Morgan Energy Partners, L.P., et al. ("Kinder Morgan") appeared before the Court on Monday, January 25, 2016 at 2:30 p.m. for a hearing on Kinder Morgan's motion for partial summary judgment and motions to exclude the opinions and testimony of four of the City's experts. *See* Doc. Nos. 203, 204, 207, 318. In anticipation of the hearing, the Court issued tentative rulings on the pending motions. For the reasons set forth below, the Court **AFFIRMS** its tentative rulings.

### INTRODUCTION [1]

On April 1, 2008, the City filed an amended complaint for remediation of the 166 acres underlying and surrounding Qualcomm Stadium and its adjoining parking lots ("the property"). The City brought a variety of claims against Kinder Morgan, the following which remain to be tried: (1) continuing public nuisance; (2) continuing private nuisance; and (3) continuing trespass. The City is seeking three categories of damages at trial based on its remaining claims, which the parties generally refer to as: (1) "water damages"—including the loss of use of the Mission Valley aquifer as a source of potable water and for underground water storage; (2) "real estate damages"—based on the property's fair rental value for redevelopment projects; and (3) "restoration damages"—to restore the property to its original, pre-contamination condition, i.e. "background." Kinder Morgan moves for partial summary judgment on several grounds, and renews three previously filed *Daubert* motions.[2] In short, Kinder Morgan seeks to drastically limit the damages available to the City at trial, and to exclude the City's experts' opinions and testimony regarding those damages.

■ As a preliminary matter, the Court finds that resolution of the issues raised in Kinder Morgan's pending motions will not violate the law of the case as it now exists subsequent to appeal and remand. The Ninth Circuit's memorandum disposition reversing this Court's previous summary judgment ruling was silent on many of the issues raised by the parties on appeal. *See California v. Kinder Morgan Energy Partners LP*, 613 Fed.Appx. 561 (9th Cir. 2015). "Lower courts are free to decide issues on remand so long as they were not ... decided explicitly or by necessary im-

---

1. Because both the Court and the parties are familiar with the underlying facts of this case, those facts are not recited here.

2. The Court notes that as to all four pending motions, the parties filed numerous objections to each other's evidence. The Court need not, and declines, to provide a full analysis of each objection. *Capitol Records, LLC v. BlueBeat, Inc.*, 765 F.Supp.2d 1198, 1200 n. 1 (C.D.Cal. 2010) (quotation omitted) (On motions with voluminous objections "it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised."); *Schwarz v. Lassen Cnty. ex rel. the Lassen Cnty Jail*, 2013 WL 5425102, at *13 (E.D.Cal.2013) (stating that extensive evidentiary objections undercut the goals of judicial efficiency and avoiding costly litigation).

plication in [the] previous disposition." *Liberty Mut. Ins. Co. v. Equal Emp't Opportunity Comm'n*, 691 F.2d 438, 441 (9th Cir.1982) (internal citations omitted). In this case, the circuit court's explicit legal rulings inform the Court's understanding of the issues currently in dispute, but do not prohibit a determination of those issues.

### KINDER MORGAN'S DAUBERT MOTIONS

Kinder Morgan seeks to exclude the opinions of four of the City's designated experts: (1) Dr. Steven Waters—an economist, whose opinion relates to the valuation of the Mission Valley aquifer as a source of water supply and storage; (2) Dr. David Huntley [3]—rebuttal expert, whose opinion relates to the suitability of the Mission Valley aquifer as a source of drinking water and the safe yield of the Mission Valley aquifer; and (3) Randall Bell, MAI and David Davis, MAI—real estate appraisers who opine that the City could have redeveloped the property and realized rental profits of $120 million, but for the contamination.

### 1. Legal Standard

Rule 702 of the Federal Rules of Evidence provides that expert opinion evidence is admissible if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed.R.Evid. 702. As the Ninth Circuit recently explained:

Under *Daubert* and its progeny, including *Daubert* II, a district court's inquiry into admissibility is a flexible one. *Alaska Rent–A–Car, Inc. v. Avis. Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). In evaluating proffered expert testimony, the trial court is "a gatekeeper, not a fact finder." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir.2010) (citation and quotation marks omitted). "[T]he trial court must assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *Id.* at 564 (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Id.* at 565 (citation and internal quotation marks omitted). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.* at 564 (citation omitted). The judge is "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent–A–Car*, 738 F.3d at 969. Simply put, "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Id.* at 969–70.

*City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir.2014). "Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge. A district court should not make credibility determinations that are reserved for the jury." *Id.* at 1044.

---

**3.** Dr. Huntley passed away. Brian Villalobos has been designated to replace Dr. Huntley. *See* Doc. No. 327. He will adopt Dr. Huntley's opinions. *See* Doc. No. 325.

### 2. Motion to Exclude Expert Opinion and Testimony of Dr. Steven Waters

On July 29, 2011, Dr. Steven Waters, an economic consultant, submitted an expert report in this case. The City hired Dr. Waters to establish a methodology for valuing the loss of use of the Mission Valley aquifer as a source of potable water supply and storage. Kinder Morgan moves to exclude Dr. Waters' opinion and testimony on a variety of grounds. Kinder Morgan argues that Dr. Waters' lack of experience with water supply or storage resulted in the use of an improper methodology that renders his opinion unreliable; Dr. Waters relied on faulty assumptions pulled from unreliable sources; and Dr. Waters' opinion is irrelevant because he does not (and cannot) provide an opinion on damages.

Kinder Morgan argues as a threshold matter that Dr. Waters is not qualified to provide an expert opinion on the method of valuing the supply and storage of water because he has never before done so. However, Rule 702 "contemplates a broad conception of expert qualifications" and "an expert may be qualified either by 'knowledge, skill, experience, training, or education.'" *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir.1994) (quoting Fed.R.Evid. 702). Dr. Waters is clearly qualified as an economist. He has provided market analyses in a wide variety of industries, and he does not need to be a water supply or storage expert in order to provide a reasoned opinion on the operation of the applicable market.

Kinder Morgan also argues that Dr. Waters' opinion is unreliable. Kinder Morgan primarily lays fault with the fact that Waters uses data and information from a 2004 Concept Study prepared by Dr. Michael Welch regarding the viability of the Mission Valley aquifer as a source of water supply, and a 2010 report prepared by the Equinox Center titled "San Diego's Water Sources: Assessing the Options," to provide value for the variables in his formulas. According to Kinder Morgan, neither the concept study nor the Equinox report is reliable, therefore Waters' opinion is unreliable. However, Dr. Waters' methodology is not dependent on the particular data he uses to illustrate its application. "Under Rule 702 and Daubert, the proper analysis is not whether some of the inputs can be questioned, but whether [the expert's] testimony is relevant and reliable, and whether the methods and principles upon which [he] has relied in forming [his] opinion have a sound basis in science." *Abarca v. Franklin County Water Dist.*, 761 F.Supp.2d 1007, 1033 (E.D.Cal.2011). Furthermore, it will be for the jury to decide whether his "demand-side" methodology is the proper one to use when trying to place a value on the City's loss of use of the aquifer.

Kinder Morgan also argues that Waters' opinion and testimony are irrelevant because he was not hired to opine on damages and cannot do so. The City concedes that Waters has no damages opinion. As such, the Court **GRANTS** Kinder Morgan's motion **in part** and precludes Dr. Waters from offering any opinion regarding damages. However, this alone does not render Waters' opinion irrelevant. Waters' methodology is meant to assist the jury with its ultimate damages calculation, not advise the jury what the damages should be. Kinder Morgan maintains that Waters' opinion is irrelevant, regardless, because the City cannot offer admissible evidence for several of the inputs to Waters' methodology for determining the aquifer's value. As discussed in detail below, the Court finds that Kinder Morgan is correct on this point, and Dr. Waters' opinion and testimony will likely be subject to exclusion at trial pursuant to Federal Rule of Evidence 402. Nevertheless, because Dr. Waters' expert opinion and testimony are not subject to exclusion under the

standards of Rule 702 and *Daubert,* the Court **DENIES** Kinder Morgan's motion except as to a damages opinion, as noted above.

### 3. Motion to Exclude Expert Opinion and Testimony of Dr. David Huntley

On December 1, 2011, Dr. David Huntley, an expert in groundwater hydrology, offered two reports in purported rebuttal to Kinder Morgan's expert hydrogeologist, Joseph Scalmanini, and Kinder Morgan's water treatment expert, Stephen Johnson. Kinder Morgan moves to exclude Dr. Huntley's opinion and testimony on a variety of substantive grounds. Kinder Morgan also seeks exclusion of five out of six of Dr. Huntley's opinions on the ground that "[e]xcepting only his Rebuttal Opinion 2 to Stephen Johnson, Dr. Huntley's opinions are not rebuttal and must be excluded." *Def. Mot.,* Doc. No. 204–1 at 12.[4]

The Court's Scheduling Order required the City to disclose its expert witnesses on or before March 11, 2011. *See* Doc. No. 144 at 1. The City initially disclosed five experts: (1) Randall Bell, MAI; (2) Ray Forrester; (3) Stephen Johnson; (4) Steven Waters; and (5) Marsi Steirer—a "non-retained expert" on "issues of the municipal water supply system in San Diego." *See Plt. Ex. Discl.,* Doc. No. 204–3 at 2. Dr. Huntley was not disclosed as an expert witness in the City's initial expert disclosure on March 11, 2011. Instead, the City disclosed Dr. Huntley on November 4, 2011 in its supplemental expert witness disclosure, as a rebuttal expert witness. *See id.* at 10.

Federal Rule of Civil Procedure 26 requires parties to disclose the identity of any expert witness "at the times and in the sequence that the court orders." Fed.R.Civ.P. 26(a)(1)(D). "A party need not disclose an expert within the deadline for initial expert reports, and can instead disclose an expert as a 'rebuttal expert,' when the expert's testimony is 'intended solely to contradict or rebut evidence on the same subject matter identified by an initial expert witness.' " *Clear-View Techs., Inc. v. Rasnick,* 2015 WL 3509384, at *2; 2015 U.S. Dist. LEXIS 72601, at *4 (N.D.Cal. June 3, 2015) (citing *R & O Constr. Co. v. Rox Pro Int'l Grp., Ltd.,* 2011 WL 2923703, at *2, 2011 U.S. Dist. LEXIS 78032, at *4 (D.Nev. July 18, 2011)). "When a party fails to make the disclosures required by Rule 26(a), the party is not allowed to use the witness to supply evidence at trial unless it establishes that the failure was substantially justified or is harmless." *Goodman v. Staples The Office Superstore, LLC,* 644 F.3d 817, 826 (9th Cir.2011) (citing Fed.R.Civ.P. 37(c)(1)). As such, Dr. Huntley's opinion and testimony are subject to exclusion if they are not proper rebuttal. *See* Fed. R.Civ.P. 37(c)(1); *see also Torres v. City of L.A.,* 548 F.3d 1197, 1212–13 (9th Cir.2008) (citing *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101, 1106 (9th Cir. 2001)).

The Court finds that Dr. Huntley's opinion and testimony "do not solely contradict or rebut" the Scalmanini and Johnson reports. *See* Fed.R.Civ.P. 26(a)(2)(D)(ii). As such, they are not proper rebuttal. Kinder Morgan argues that "the City's failure to disclose an expert on the viability of its water project could not have been an oversight, but rather represents a strategic choice." *Def. Mot.,* Doc. No. 204–1 at 14. The Court agrees. The City's failure to disclose a water expert, and Dr. Huntley in particular, by the March 11, 2011 initial expert disclosure deadline is indefensible. "Normally, parties are expected to present all of their

---

**4.** All citations refer to the pagination assigned by the CM/ECF system.

evidence in their case in chief." *Skogen v. Dow Chemical Co.*, 375 F.2d 692, 705 (8th Cir.1967). The use of the groundwater underneath the property as a source of potable water has been a key part of this litigation from its inception. The City's amended complaint alleges:

In the past, groundwater from the area of the Property was sufficient to meet San Diego's demands. To date, the contamination and pollution at, and emanating from, the MVT have thwarted, delayed and prevented the City's plans to bring this source of drinking water back into production. Groundwater from beneath the Property was used in the past for drinking water, has been officially identified as a sources of drinking water, and is planned and intended to use in the future as a source of drinking water. As a result of Defendants' acts and omissions, San Diego now has delayed its plans for using this groundwater for drinking until no earlier than 2010. Even this date is imperiled as a result of Defendants' acts and omissions. Thus, the City's planned development and use of the Mission Valley groundwater for drinking water has been and continues to be thwarted by Defendants' contamination of the groundwater at the Property.

Am. Comp., Doc. No. 32 ¶ 44.

Dr. Huntley specialized in groundwater hydrology, specifically "aquifer test analysis, the effects of heterogeneities on rates and direction of groundwater flow, and the movement and dissolution of non-aqueous liquids." *Huntley Report I*, Doc. No.2043 at 39. Yet, the City identified Steven Waters—an economist—in its initial expert disclosures but not Dr. Huntley. As discussed above, the City retained Dr. Waters to give his expert opinion on the proper methodology for valuing the Mission Valley aquifer as a source of supply and storage of groundwater. The City's designation of an expert to opine on the method to value of the loss of use of the aquifer, but no expert to opine on the actual loss of use of the aquifer, seems problematic. When queried during the January 25 hearing regarding the failure to disclose a water expert, the City asserted that it did not think it needed an expert on water damages. This statement is difficult to fathom. Issues such as calculating the projected safe yield from the aquifer, and determining the adequacy of the aquifer as a source of groundwater supply and storage, are technical and complex, and require testing and evaluation by qualified professionals in the fields of hydrology and hydrogeology.

When a plaintiff's case, particularly with regard to damages, relies in part on the viability, operation, and value of a complex product, the plaintiff must expect to introduce such expert testimony—this is particularly true when the plaintiff can expect that the defendant will attempt to show that the product cannot work or has no value. Here, knowing that in its case-in-chief it would argue that the Mission Valley aquifer is viable as a source of supply and storage of groundwater, is therefore valuable, and entitles the City to millions in damages, the City's designation of Dr. Huntley as a mere rebuttal expert seems to be disingenuous, at best. A party with the burden of proof on an issue "should not be allowed to secretly prepare an army of 'rebuttal' experts ... If they were allowed to do so, their work would not be subject to a direct response from any opposing expert. This immunity, combined with the element of surprise," is simply unfair. *Oracle Am., Inc. v. Google Inc.*, 2011 WL 5572835, *3, 2011 U.S. Dist. LEXIS 131706, *11–12 (N.D.Cal.2011). The City's response—that Dr. Huntley opines on the same subject matter as Kinder Morgan's experts, and is therefore a proper rebuttal expert—is insufficient. *See Vu v. McNeil–PPC, Inc.*, 2010 U.S. Dist. LEXIS 53639,

2010 WL 2179882, at *2 (C.D.Cal. May 7, 2010) ("If the phrase 'same subject matter' is read broadly to encompass any possible topic that relates to the subject matter at issue, it will blur the distinction between 'affirmative expert' and 'rebuttal expert.' More importantly, such a broad reading of Rule 26(a)(2)(C)(ii) will render the scope of the subject matter limitless and will lead to unjust results.")).

 Dr. Huntley was not disclosed as an expert witness in the City's initial expert disclosures on March 11, 2011, nor did he provide a report when the City's expert reports were due on July 29, 2011. His expert opinion and testimony are essential to proving the City's case-in-chief— it's entitlement to "loss of use" water damages—and are not proper rebuttal. Furthermore, the late disclosure of Dr. Huntley's opinion was neither "substantially justified" nor "harmless." Fed.R.Civ.P. 37(c)(1). The party facing exclusion of evidence has the burden of showing that the failure to disclose was justified or harmless. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir.2001). The City did not attempt to make such a showing in its opposition brief. During the January 25 hearing, the City provided no substantial justification for its failure to disclose Dr. Huntley by the appropriate deadline, but argued that the late disclosure was harmless. The City argued that Kinder Morgan suffered no prejudice because it was able to depose Dr. Huntley, and Scalmanini and Johnson were able to prepare rebuttal reports in response to Dr. Huntley's reports. Kinder Morgan was only able to do these things, however, because of the Court's staggered disclosure deadlines and extensions of those deadlines. When a party fails to identify an expert witness and provide the disclosures required by Rule 26(a)(2) in accordance with the court's scheduling order, "[d]isruption to the schedule of the court and other parties in that manner is not harmless." *Wong v. Regents of the University of California*, 410 F.3d 1052, 1062 (9th Cir.2005). Kinder Morgan received Huntley's reports at the last possible moment and approximately five weeks prior to the previously set deadline for Kinder Morgan's supplemental expert reports. This is not harmless when Dr. Huntley should have been disclosed as an initial expert, which would have given Kinder Morgan's experts months to prepare rebuttal reports.

The Court recognizes that "[e]xcluding an expert from testifying is in fact a 'Draconian sanction.'" *Gibson v. Credit Suisse AG*, 2016 WL 81224, at *4, 2016 U.S. Dist. LEXIS 2088, at *13 (D.Idaho Jan. 7, 2016) (internal quotations omitted). However, in this instance, it is appropriate. Accordingly, the Court **GRANTS** Kinder Morgan's motion and strikes Dr. Huntley's rebuttal report to the Scalmanini report, as well as his opinion 1 in rebuttal to the Johnson report. Brian Villalobos is prohibited from testifying regarding these opinions at trial.

**4.** *Motion to Exclude Expert Opinions and Testimony of Randall Bell and David Davis* [5]

 On July 29, 2011, Randall Bell, a certified general real estate appraiser,

---

**5.** In support of its motion to exclude the expert opinions of real estate appraisers Bell and Davis, Kinder Morgan requests that the Court take judicial notice of two documents produced by another tribunal: (1) In the Matter of The People of Utrik, NCT No. 23–06103 Memorandum of Decision and Order of the Nuclear Claims Tribunal of the Republic of the Marshall Islands, Dec. 15, 2006), and (2) In the Matter of The Alabs of Rongelap, et al., NCT No. 23–02440, In the Matter of Jabon on Rongelap Atoll, NCT No. 23–05443–B, In the Matter of Rongerik Atoll, NCT No. 23–05445–B, In the Matter of Iroij Imata Jabro Kabua, NCT No. 23–00501 (Memorandum of Decision and Order of the Nuclear Claims Tribu-

offered an expert appraisal report regarding "the impact, if any, that subsurface soils and groundwater contamination has on the of the subject property [Qualcomm Stadium], and to analyze the project delay issues." *Bell Report*, Doc. No. 207–3 at 7. On December 2, 2011, David Davis, an independent real estate appraiser and consultant, offered an expert rebuttal report in response to Hendricks Report, prepared by Kinder Morgan's real estate damages expert. In addition, the land value for the property used in the Bell Report is derived from the appraisal performed by Davis. Kinder Morgan moves to exclude the opinions and testimony of Bell and Davis.

◼◼◼◼ Kinder Morgan argues that Bell's opinion should be excluded because his analysis violates USPAP[6] standards, as it is based on "unsupportable assumptions, including: 1) the Chargers Lease that runs through the year 2020 can be ignored; 2) the contamination prevents redevelopment; and 3) the City would have redeveloped the Property, but for the contamination." *Def. Mot.*, Doc. No. 207–1 at 6. Bell does not ignore the Chargers Lease in his report. He references, discusses, and discloses it. Bell's use of a fee simple basis for his analysis incorporates the absence of the Chargers Lease as a hypothetical condition. To the extent Bell's analysis hinges on the absence of the Chargers Lease as an encumbrance on the property, the reasonableness of that hypothetical condition goes to weight and credibility. This is true with respect to Bell's additional hypothetical conditions. Kinder Morgan's expert disagrees, but that is not a sufficient basis to exclude Bell's opinion. And according to the Ninth Circuit, real estate "damages can be proved through estimates of a property's rental value based on hypothetical assumptions rather than its actual use." *Kinder Morgan Energy Partners, LP*, 613 Fed.Appx. at 564.

◼◼◼◼ Kinder Morgan also argues that Bell's opinion should be excluded because he uses an unreliable methodology to calculate the City's alleged real estate damages. Bell employs the "ground rent capitalization" method, which is a means of applying the income capitalization approach to estimating the value of property. Under the California Evidence Code, income capitalization is an acceptable method of determining the market value of property. *See* Cal. Evid.Code § 819 ("When relevant to the determination of the value of property, a witness may take into account as a basis for his opinion the capitalized value of the reasonable net

nal of the Republic of the Marshall Islands, Apr. 17, 2007). The Court may consider "matters properly subject to judicial notice," *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir.2007), which include court filings in other tribunals and other matters of public record. Fed.R.Evid. 201; *Reyn's Pasta Bella, LLC v. Visa USA, Inc.* 442 F.3d 741, 746 n. 6 (9th Cir.2006); *Biggs v. Terhune*, 334 F.3d 910, 916 n. 3 (9th Cir.2003). Kinder Morgan also requests that the Court take judicial notice of the following documents: (1) The Appraisal Standards Board, Standards of Professional Appraisal Practice, Appraisal Foundation, 2010–2011 Edition. Washington, DC: The Appraisal Foundation (2010); (2) Randall Bell, MAI, Project Delay Economics, The Appraisal Journal, Fall 2011; (3) Relevant excerpts from Appraisal Institute, Subdivision Valuation (2005); (4) California State Water Resources Control Board Resolution No. 9249 (June 18,1992); (5) Legislative history for California Civil Code § 3334 (A.B. 2663, 1991–92 Reg. Sess. (Cal.1992)). All these documents are appropriate for judicial notice. As such, the Court grants Kinder Morgan's requests for judicial notice.

6. "[T]he Uniform Standards and Professional Appraisal Practice [USPAP] constitute the minimum standard of conduct and performance for a licensee in any work or service performed that is addressed by those standards." Cal. Bus. & Prof.Code § 11319 (emphasis added).

rental value attributable to the land and existing improvements thereon.").

With respect to Davis, Kinder Morgan asserts that his estimate of land value for the property is unreliable because he used an appraisal for a nearby mix-use development as a basis for his valuation. Kinder Morgan also faults Davis for allegedly failing to deduct all direct and indirect development costs. However, these criticisms go to the weight and credibility of Davis' opinion.

 Finally, Kinder Morgan argues that Bell and Davis' opinions must be excluded because at deposition, Bell and Davis offered conflicting testimony regarding two components of their analyses: (1) the approach that was used to arrive at the unimpaired land value; and (2) the highest and best use of the property. According to Davis and Bell, Davis estimated the land value using a developmental method (also referred as the residual method); Bell cross-checked Davis' developmental method valuation using a sales-comparison method; and the valuations corroborate each other. *Bell Decl.,* Doc. No. 233–1 at 5–6; *Davis Decl.,* Doc. No. 233–3 at 5–6. With respect to the highest and best use of the property, Davis considered the highest valuation to be a mixed use development that did not include a stadium, while Bell considered the mixed use development with and without a stadium. Bell ultimately concluded: "After considering various uses, it is determined that the highest and best use of the subject property, both "as is" and "as if vacant", is to demolish the existing stadium improvements and to redevelop the site with a mix-use develop-

ment, with or without a new stadium." *Bell Report,* Doc. No. 207–3 at 58. There is no discrepancy between Bell and Davis on this point as Bell considered the stadium as well as the no stadium scenarios.

For these reasons, the Court **DENIES** Kinder Morgan's motion to exclude the opinions and testimony of Randall Bell and David Davis.

### KINDER MORGAN'S MOTION FOR PARTIAL SUMMARY JUDGMENT [7]

 Kinder Morgan moves for partial summary judgment, arguing that the City's requested damages are subject to several limitations as a matter of law: (1) the City is limited to seeking damages actually incurred during the three years immediately prior to the filing of this lawsuit; (2) the City has no evidence to support its entitlement to water storage damages; (3) the City cannot prove its claimed real estate damages, which rely upon a redevelopment plan that does not take into account the San Diego Charger's current lease on the property; and (4) the City's claim for restoration damages is speculative, would result in an impermissible windfall, and is contrary to California Civil Code section 3334:

#### 1. Legal Standard

 "A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as

---

7. In support of its motion for partial summary judgment, Kinder Morgan requests that the Court take judicial notice of "California State Water Resources Control Board Resolution No. 92–49" (as Amended on April 21, 1994 and October 2, 1996). Judicial notice of a state agency resolution is appropriate because its existence is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b); *Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.,* 981 F.2d 429, 435 (9th Cir.1992) (taking judicial notice of the existence of decisions of the California Public Utility Commission). As such, the Court grants Kinder Morgan's request.

a matter of law." Fed.R.Civ.P. 56(a). The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material if it could affect the outcome of the suit under applicable law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248, 106 S.Ct. 2505. The party opposing summary judgment cannot " 'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.' " *Estate of Tucker v. Interscope Records,* 515 F.3d 1019, 1030 (9th Cir.), cert. denied, 555 U.S. 827, 129 S.Ct. 174, 172 L.Ed.2d 44 (2008) (quoting Fed.R.Civ.P. 56(e)).

### 2. *Limitation on Available Damages*

▪ Kinder Morgan first argues that because the City's remaining claims are for continuing nuisance and trespass, the City "can only seek damages allegedly incurred during the three years [8] immediately before it filed suit. Any alleged damages accruing thereafter are not recoverable as a matter of law." *Def. Mot.,* Doc. No. 318–1 at 16. Kinder Morgan cites to the California Supreme Court's holding in *Baker v. Burbank–Glendale–Pasadena Airport Auth.,* 39 Cal.3d 862, 869, 218 Cal.Rptr. 293, 705 P.2d 866 (1985), wherein the court held that "[r]ecovery is limited, [in continuing cases], to

actual injury suffered *prior to commencement of each action.* Prospective damages are unavailable." (emphasis added).

In its previously filed pleadings, the City appeared to concede that "the statute of limitations allows recovery *only for three years preceding the filing* of the nuisance and trespass claims." *City's Response to Def. MPSJ Re: Water Damages,* Doc. No. 235 at 9 (emphasis added); *see also City's Response to Def. MPSJ Re: Real Estate and Restoration Damages,* Doc. No. 232 at 16. However, the City now disagrees with Kinder Morgan's position. The City argues that it may seek any damages accrued during the three years preceding the commencement of this action, continuing through the time of judgment. In support, the City cites to California Civil Code § 3283, a general damages provision, which states that "[d]amages may be awarded, in a judicial proceeding, for detriment resulting after the commencement thereof, or certain to result in the future." Cal. Civ.Code § 3283.

The Court has undertaken an exhaustive review of relevant state and federal law, and concludes that the City may only seek damages incurred during the three years immediately preceding the filing of this lawsuit.

Over one hundred years ago, in *Williams v. Southern P.R. Co.,* 150 Cal. 624, 89 P. 599 (1907), the California Supreme Court had occasion to consider the interplay between California Code of Civil Procedure § 338, which sets forth the three year statute of limitations for nuisance and trespass claims involving real property; California Civil Code § 3283, relied upon here by the City; and differences between permanent and continuing nuisances/trespasses. The court explained that "where the injury or trespass is of a

---

**8.** The statute of limitations for tort claims arising from property damage is three years.

Cal.Code Civ. Pro. § 338(b).

permanent nature, all damages, past and prospective, are recoverable in one action." *Id.* at 626, 89 P. 599. Citing California Civil Code § 3283 and its own precedent, the court stated that "[w]henever by one act a permanent injury is done, the damages are assessed once for all." *Id.* The court further explained that in cases of continuing trespass or nuisance, a plaintiff "can recover only the damages *which have accrued up to the institution of the action.*" *Id.* (emphasis added).

The reasoning of *Williams* has stood the test of time in California, and *Baker* and its progeny are consistent with *Williams*. With one exception cited by the City, *Renz v. 33rd Dist. Agricultural Ass'n*, 39 Cal. App.4th 61, 46 Cal.Rptr.2d 67 (1995) [9], California's appellate courts have held that when a nuisance or trespass is continuing, "the injured party is entitled to bring a series of successive actions, each seeking damages for new injuries *occurring within three years of the filing of the action.*" *McCoy v. Gustafson*, 180 Cal.App.4th 56, 84, 103 Cal.Rptr.3d 37 (2009) (emphasis added). *See also Beck Dev. Co. v. S. Pac. Transp. Co.*, 44 Cal.App.4th 1160, 1216, 52 Cal.Rptr.2d 518 (1996) ("In an action on a permanent nuisance, the plaintiff will be permitted to recover both past and prospective damages while in an action on a continuing nuisance prospective damages are unavailable and recovery is limited to actual injury *suffered prior to commencement of each action.*"); *Capogeannis v. Superior Court*, 12 Cal.App.4th 668, 684–685, 15 Cal.Rptr.2d 796 (1993) ("the Capogeannises have now made clear that they do intend to pursue their unbarred claim for continuing nuisance and trespass, *limited to recovery for actual injury suffered within the three years immediate-*

*ly preceding December 14, 1990* [the date the Capogeannises filed the lawsuit]") (emphasis added); *Mangini v. Aerojet–Gen. Corp.*, 230 Cal.App.3d 1125, 1148, 281 Cal. Rptr. 827 (1991) (citing *Baker, supra*, 39 Cal.3d at 869, 218 Cal.Rptr. 293, 705 P.2d 866) ("We therefore conclude plaintiffs should be allowed to amend their complaint to state their proposed facts so as to aver a theory of continuing nuisance and to seek *damages caused them within three years of the date of filing the complaint.*") (emphasis added); *Bourdieu v. Seaboard Oil Corp.*, 38 Cal.App.2d 11, 23, 100 P.2d 528 (1940) ("the use and occupancy ... is in the nature of a continuing trespass, and appellant may recover for such resulting damages as he has sustained *within the three years next preceding the filing of this action.*); *Lindberg v. Linder*, 133 Cal.App. 213, 218, 23 P.2d 842 (1933) (in the case of "a continuing trespass," "recovery may be had for a *period of time not exceeding the statutory period immediately preceding filing of the action*"); *Coats v. Atchison, T. & S.F. Ry. Co.*, 1 Cal.App. 441, 444–445, 82 P. 640 (1905) ("in cases of nuisance, 'the rule of damages ... is the amount of injury actually *sustained at the commencement of the suit*'") (citing 2 Greenleaf on Evidence, sec. 474; Wood on Nuisances, sec. 855).

Federal courts in California have similarly held that in actions for continuing trespass or nuisance, the plaintiff is limited to seeking damages which occurred three years prior to the filing of the lawsuit. *SPPI–Somersville, Inc. v. TRC Co.*, 2009 WL 2612227, *23 n. 20, 2009 U.S. Dist. LEXIS 74464, *77–78 n. 20 (N.D.Cal. Aug. 21, 2009) (quoting *Baker*, 39 Cal.3d at 869, 218 Cal.Rptr. 293, 705 P.2d 866) ("The

**9.** As Kinder Morgan correctly notes, two district courts in California have considered *Renz,* found that it is an outlier, and declined to follow its interpretation of *Baker. See City*

*of Rialto v. U.S. Dep't of Def.*, 2004 WL 6067430, at *6–7 (C.D.Cal. July 12, 2004); *Adobe Lumber, Inc. v. Hellman*, 2008 WL 4539136, at *3 & n. 2 (E.D.Cal. Oct. 2, 2008).

Court agrees with defendants that recovery in a continuing tort claim is limited 'to actual injury *suffered prior to commencement of each action.*'") (emphasis added); *Torrance Redevelopment Agency v. Solvent Coating Co.*, 781 F.Supp. 650, 653 (C.D.Cal.1991) ("the Court reinstates the seventh cause of action to the extent it seeks recovery for the alleged continuing trespass, any damage recoverable being *limited to that which occurred within three years prior to the filing date of the original complaint.*") (emphasis added); *Mortkowitz v. Texaco Inc.*, 842 F.Supp. 1232, 1242 (N.D.Cal.1994) ("Plaintiffs may pursue their claims for continuing nuisance, public nuisance and continuing trespass, but their recovery is *limited to those damages sustained within the three years prior to the commencement of this action* in April 13, 1990.") (emphasis added); *Arcade Water Dist. v. United States*, 940 F.2d 1265, 1269 (9th Cir.1991) (citing *Baker*, 39 Cal.3d at 869, 218 Cal.Rptr. 293, 705 P.2d 866) ("Arcade may elect to treat the nuisance as continuing, entitling Arcade to an action not for permanent damages, but rather for only those *damages suffered in the two years preceding the filing* of its FTCA claim.") (emphasis added).

Based on the federal and state case law cited above, the Court **GRANTS** Kinder Morgan's motion for partial summary judgment and finds that the City is limited to seeking damages accrued within the three year period immediately preceding the filing of this lawsuit.

### 3. Water Damages

 Kinder Morgan moves for partial summary judgment as to the City's alleged water storage damages.[10] Kinder Morgan argues, *inter alia*, that the City has no expert evidence to support its damages claim for loss of use of the Mission Valley aquifer. Based on Dr. Huntley's designation as a rebuttal expert, and the Court's exclusion of his opinion and testimony under Federal Rule of Civil Procedure 37, Kinder Morgan is correct—the City does not have a water expert. The City sidesteps the issue of damages, and responds that it will present evidence at trial that "Defendants' contamination was a substantial factor in not yet developing the Mission Valley aquifer as emergency water storage." *City Opp.*, Doc. No. 324 at 22. According to the City, this evidence[11] includes "deposition testimony by City witnesses, and repeated studies by City con-

---

**10.** The City is seeking "water damages," including the loss of use of the Mission Valley aquifer as a source of both supply and storage of potable water. Throughout this litigation, the parties have treated the two aspects of the aquifer separately and thus refer to "water supply" damages and "water storage" damages. Kinder Morgan moves for summary judgment as to the City's claim for "water storage" damages. In terms of calculating actual damages, it makes sense to bifurcate the water damages claim. But because both types of damages hinge on proof of a viable water project and expert testimony regarding the values of the inputs into Dr. Waters' methodology for calculating damages, they rise and fall together and the Court analyzes them accordingly.

**11.** The evidence cited by the City is comprised of the following: "City of San Diego Local Groundwater Basins Preliminary Assessment, July, 2001, Technical Memorandum No.3," by Camp Dresser & McKee; "San Diego River System Conceptual Groundwater Management Plan, May 30, 2003," by CH2MHili; "City of San Diego Water Resources Implementation Plan, July 2004," by CDM; "DRAFT Characterization of the Mission Valley Groundwater Basin, August 30, 2001," by CH2MHili; "Concept Study, Mission Valley Groundwater Desalting Project," dated March 2004 by Dr. Michael Welch; Excerpts from the deposition transcript of Marsi Steirer, the City's non-retained expert on "issues of the municipal water supply system in San Diego." *Foust Decl.*, Doc. No. 324–1, Exs. B, C, D, E, F, & G.

sultants [which] addressed the Mission Valley aquifer for underground water storage (conjunctive use, seasonal storage, and/or emergency storage options)." *Id.*

■ The City witnesses are fact witnesses, and the consultants are not designated experts. None of the evidence cited by the City in support of causation can substitute for expert testimony, which is required to establish the City's entitlement to water damages. The City may not submit the identified technical reports as a substitute for the required expert testimony. The opinions and conclusions contained in the technical reports are quite clearly "based on scientific, technical, or other specialized knowledge within the scope of Rule 702," and thus may not be presented by a fact witness, such as Marsi Steirer. *See* Fed.R.Evid. 701(c) ("If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."). The authors of the reports were not designated as expert witnesses, and may not testify as to their expert opinion regarding the contents of the reports. Dr. Welch may testify as a fact witness to the contents of his study, but neither Welch's testimony nor his study are substitutes for expert testimony.

■ With respect to Steirer's testimony, Steirer herself acknowledged during her deposition that she is not a hydrogeologist. The lack of pertinent qualifications

to evaluate hydrological and hydrogeological issues render Steirer's views, and the assumptions behind them, lay speculation on matters that require qualified technical expertise. *See Stockton East Water Dist. v. United States,* 109 Fed.Cl. 760, 783 (Fed.Cl.2013) (long-time, experienced employee of plaintiff water district did not have the background to qualify as an expert witness on water usage by a city). Although Steirer may have dealt with issues related to the municipal water system in her capacity as a former City employee, she is not professionally qualified to render an opinion about the studies conducted by the consultants who prepared the technical reports upon which the City purports to rely.

■ Simply put, Kinder Morgan is entitled to summary judgment on both aspects of the City's water damages claim—supply and storage—because the City will not be able to prove damages at trial without expert testimony, and damages is an essential element of the City's nuisance and trespass claims. *See, e.g., Helix Land Co. v. City of San Diego,* 82 Cal.App.3d 932, 950, 147 Cal.Rptr. 683 (1978) ("An essential element of a cause of action for nuisance is damage or injury."). As such, based on the City's lack of expert opinion or testimony to support its claim for water damages, the Court **GRANTS** Kinder Morgan's motion for partial summary judgment as to the City's water damages claim.[12]

12. The Court notes that this ruling does not violate the law of the case. The Ninth Circuit previously held that a jury could find that a water project on the property is viable based on the testimony of Dr. Welch. The circuit court went on to note that "[w]hether this evidence supports the amount of damages requested is a separate question." *Kinder Morgan Energy Partners, LP,* 613 Fed.Appx. at 564. Because the City did not designate Dr. Welch as an expert, the circuit court's holding might be interpreted to mean that expert testi-

mony is not necessary to establish the viability of the aquifer as a source of water supply and storage, but an expert is necessary to establish damages from the loss of use of the aquifer. In this respect, Dr. Welch's testimony could be offered at trial to establish the feasibility of a water project. However, as discussed above, he cannot provide expert testimony regarding the actual value of such a project, i.e. the inputs for Dr. Waters' methodology. And, also as discussed above, Dr. Waters cannot offer an expert opinion on damages be-

#### 4. Real Estate Damages

Kinder Morgan moves for summary judgment as to the City's alleged real estate damages, arguing that the City's estimated damages are based on the fair rental value of the property as a mixed-use redevelopment project that is legally impermissible based on the existence of the Chargers Lease. As such, Kinder Morgan asserts that the City will not be able to prove its claimed real estate damages as a matter of law.

California Civil Code § 3334 sets out the proper measure of damages, and provides, in pertinent part: "(a) The detriment caused by the wrongful occupation of real property . . . is deemed to include the value of the use of the property for the time of that wrongful occupation, . . . the reasonable cost of repair or restoration of the property to its original condition, and the costs, if any, of recovering the possession." Cal. Civ.Code § 3334. "[T]he usual measure of damages for a continuing or permanent trespass is the reasonable rental value of the use of the property. Typically, that value is the reasonable rental value during the period of wrongful occupation of the property." Cassinos v. Union Oil Co., 14 Cal.App.4th 1770, 1777, 18 Cal.Rptr.2d 574 (1993) (internal citations omitted) (citing Cal. Civ.Code § 3334).

In its memorandum disposition reversing this Court's previous ruling, the Ninth Circuit instructed that the property's "reasonable rental value" could be based on a "hypothetical highest and best use." Kinder Morgan Energy Partners, LP, 613 Fed.Appx. at 564. Kinder Morgan argues that "[a]lthough the Ninth Circuit's memorandum may permit the City to seek damages based on hypothetical assumptions, there is nothing in that memorandum or the law permitting the City to outright ignore actual legal restrictions encumbering the Property." Def. Mot., Doc. No. 318–1 at 23. Kinder Morgan points to the fact that the "highest and best use" is the "most profitable legally permissible use for which the property is physically, geographically, and economically adaptable." See CACI 3502 ("Highest and Best Use Explained") (emphasis added).

As discussed above, the City's experts considered the absence of the Chargers Lease as an encumbrance on development to be a reasonable hypothetical condition to use when rendering a value opinion in this case. According to the City's experts, the Chargers and the City could have—hypothetically—terminated or renegotiated the lease at any time. That would have freed the property for redevelopment to a "higher and best use." According to US-PAP, a hypothetical condition is "[t]hat which is contrary to what exists but is supported for the purpose of analysis." Bell Report, Doc. No. 207–3 at 11 (citing Appraisal Foundation: USPAP 2010–2011 Edition). The absence of the Chargers Lease is such a condition. The use of that hypothetical condition by the City's experts will be a factor for the jury to consider when determining whether to award the City any real estate damages.

As such, the Court **DENIES** Kinder Morgan's motion for partial summary judgment as to the City's real estate damages claim.

#### 5. Restoration Damages

Kinder Morgan argues that the City's restoration damages fail as a matter of law. The City's restoration damages are based on the cost to restore the property to "background," i.e. the property's original pre-contamination condition. Kinder Morgan argues that restoration of the property to "background" is unreason-

cause he was not retained to do so by the City.

able, as it is not the standard required by the applicable government agency, is technically infeasible, and is nearly double the value of the property itself. As such, Kinder Morgan asserts that the City's requested damages are prohibited under California Civil Code § 3334, which only allows damages for "the *reasonable* cost of repair or restoration of the property to its original condition." Cal. Civ.Code § 3334(a) (emphasis added).

The City asserts that the "reasonableness" of its claim for restoration costs is a factual issue for the jury to decide. The Court agrees. In California, the City's entitlement to restoration damages must be determined by a jury:

> Civil Code section 3334 requires that restoration costs be reasonable. In addition, general principles of damages in trespass cases require that the damages bear a reasonable relationship to the harm caused by the trespass . . . whether abatement costs are reasonable requires an evaluation of a number of fundamental considerations, including the expense and time required to perform the abatement, along with other legitimate competing interests.
>
> In order to balance these competing interests, a *jury* must be told that once it resolves the factual issue of how much it might cost to restore the groundwater . . . to its original state (resolving the evidence presented by the experts), *it must then determine whether the restoration costs are reasonable in light of all the competing interests*.

*Starrh & Starrh Cotton Growers v. Aera Energy LLC*, 153 Cal.App.4th 583, 601, 63 Cal.Rptr.3d 165 (2007) (internal citations omitted) (emphasis added). The *Starrh* case involved a continuing nuisance to land (groundwater contamination) in which damages were assessed pursuant to California Civil Code section 3334. Because of the express reasonableness requirement,

the court in *Starrh* held that the jury must be advised "what to do if [they] conclud[e] the evidence shows the proposed restoration [costs] [are] unreasonable." *Id.* at 601, 602, 63 Cal.Rptr.3d 165 ("For example, the jury needs to be advised that it can deny damages if it concludes the restoration costs are unreasonable.").

Nonetheless, Kinder Morgan argues that in this case the issue should not go to a jury because there is no legal basis to award costs of restoration in excess of the standard established by applicable government regulations. However, this is a factor that goes towards the reasonableness of the requested restoration damages. It does not preclude those damages as a matter of law. As such, the issue goes to a jury.

■■■ In the alternative, Kinder Morgan argues that "[a]warding the City $126.2 million in 'damages' based on a hypothetical cleanup level not required by the Water Board would be an impermissible windfall." *Def. Mot.*, Doc. No. 318–1 at 28. Kinder Morgan cites to an unpublished case out of the Southern District of Indiana for support, *Allgood v. Gen. Motors Corp.*, 2006 WL 2669337 (S.D.Ind. 2006). In *Allgood*, the defendant was undertaking remediation of contaminated property to government standards. The plaintiffs nonetheless sought an additional amount for remediation to "background." The court found no basis to award "the massive costs of a merely hypothetical clean-up that would go far beyond the actual clean-up ordered by state and federal authorities." *Id.* at *20–25. However, *Allgood* is not binding authority, and Kinder Morgan cites no such authority for its "windfall" theory. Again, in California, the reasonableness of restoration costs is a question of fact for the jury. *Mangini v. Aerojet–General Corp.*, 12 Cal.4th 1087, 1101, 51 Cal.Rptr.2d 272, 912 P.2d 1220

(1996) ("Where abatability is a question of fact, cost is an appropriate factor to consider.").

As such, the Court **DENIES** Kinder Morgan's motion for partial summary judgment as to the City's restoration damages claim.

### CONCLUSION

Based on the foregoing, the Court **AFFIRMS** its tentative rulings. Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Kinder Morgan's motion to exclude the testimony and opinions of Dr. Steven Waters [Doc. No. 203]; **GRANTS** Kinder Morgan's motion to exclude the testimony and opinions of Dr. David Huntley [Doc. No. 204]; **DENIES** Kinder Morgan's motion to exclude the testimony and opinions of Randall Bell, MAI, and David Davis, MAI [Doc. No. 207]; and **GRANTS IN PART** and **DENIES IN PART** Kinder Morgan's motion for partial summary judgment [Doc. No. 318].

**IT IS SO ORDERED.**